IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHICKEN N PICKLE, LLC | ) | |
| | ) | |
| Plaintiff | ) | Case No. |
| v. | ) | |
| | ) | |
| RYAN PATTON | ) | |
| | ) | |
| MICHAEL SULLIVAN | ) | |
| | ) | |
| EVP CAPITAL ADVISORS, LLC | ) | Jury Trial Demanded |
| | ) | |
| Defendants | ) | |

**COMPLAINT FOR DAMAGES**

Plaintiff Chicken N Pickle, LLC brings the following complaint against Defendants Ryan Patton, Michael Sullivan, and EVP Capital Advisors for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

**NATURE OF THE CASE**

1. Plaintiff Chicken N Pickle ("CNP") operates several chef-driven, casual eateries and bars with pickleball courts, shaded beer gardens, and backyard games.

2. Defendants are the developers of Tap Ins Greenhouse, a planned mini-golf bar and restaurant slated to open in Overland Park Kansas, which will include indoor miniature golf, a beer garden, restaurant, and multiple bars.

3. Plaintiff obtained a copy of a presentation that was, upon information and belief, created by EVP for the purpose of soliciting investment in Tap Ins.

4. That presentation contained secret and accurate financial information

regarding the performance and profitability of CNP's location in North Kansas City, Missouri.

5. The financial information in EVP's possession is a trade secret which, upon information and belief, was obtained by EVP for its benefits in violation of the Defend Trade Secrets Act.

## THE PARTIES

6. Chicken N Pickle ("CNP") is a corporation organized under Missouri law with its principal place of business in North Kansas City, MO.

7. EVP Capital Advisors, LLC (EVP) is a corporation organized under Kansas law with its principal place of business in Fairway, KS, within this judicial district.

8. Defendant Ryan Patton is an individual residing in Kansas.

9. Defendant Michael Sullivan is an individual residing in Kansas.

## JURISDICTION AND VENUE

10. The Court has federal subject matter jurisdiction over this action which arises under 18 U.S.C. §§ 1832-39 pursuant to 28 U.S.C. §§ 1331, 1338.

11. The Court has supplemental jurisdiction over the state common law claims because these claims form part of the same case and controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

12. Alternatively, this Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

13. This Court has personal jurisdiction over Defendant, who is located in Kansas.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

15. CNP obtained pages from what appeared to be a presentation designed to solicit investment in Tap Ins Greenhouse.

16. In the presentation, CNP's location in North Kansas City was listed as a "comparable" to Tap Ins.

17. The presentation included accurate information regarding CNP's North Kansas City's 2023 total revenue, including breakouts of the revenue into percentages attributable to food, alcohol, and pickleball sales.

18. The presentation included accurate dollar amounts of revenue derived from pickleball, food and beverage sales, and even sales.

19. The presentation included accurate information regarding average revenue, profit, and net operating income across CNP locations.

20. This information was confidential and has never been publicly disclosed.

21. The presentation included a page titled "Our Team" identifying officers and employees of the PB&J Restaurant Group.

22. Accordingly, on August 12, 2024, CNP sent a demand to PB&J that it destroy and stop sharing CNP's financial information.

23. On August 13, PB&J responded. It denied any involvement in preparing or sharing the presentation.

24. PB&J stated that it believed the developer of Tap Ins had "incorporated our names and likeness as consultants on the food and beverage aspect of the project."

25. Upon information and belief, Defendants are the developers and prepared the presentation.

26. PB&J confirmed via counsel on August 26 that they had not prepared or shared the presentation containing CNP's confidential financial information.

27. Counsel for CNP contacted EVP to confirm the presentation was prepared by EVP and demanding that EVP disclose how it obtained CNP's proprietary financial information.

28. While EVP confirmed that it would not further share the presentation containing CNP's financial information, it refused to disclose the source of the information.

## COUNT I
### Violation of the Defend Trade Secrets Act, 18 U.S.C. §§1832-39

29. CNP's financial information is a trade secret.

30. CNP has never publicly disclosed its financial information.

31. CNP takes measures to keep its financial information confidential.

32. CNP only distributes its financial data internally.

33. CNP's financial data is stored in its password-protected accounting system which is only accessible to a limited number of CNP employees.

34. In addition to not being generally known, CNP's financial information has independent value in that, in this case, it was used by a competitor to solicit investors in its comparable business.

35. Defendants are not investors or shareholders in CNP; CNP never voluntarily shared its financial information with Defendants.

36. Defendants did not have authorization to obtain or convey CNP's financial information.

37. Defendants obtained and disseminated CNP's financial information in violation of 18 U.S.C. §1832(a).

38. Defendants therefore misappropriated CNP's trade secrets by using improper means to acquire knowledge of CNP's financial information.

39. Upon information and belief, at the time it acquired CNP's financial information, Defendants knew or should have known that its knowledge of CNP's trade secrets were:

   a. derived from or through a person who had used improper means to acquire the trade secrets;
   b. acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets; or
   c. derived from or through a person who owed a duty to CNP not to disclose CNP's financial information.

40. After acquiring CNP's financial information, Defendants then, upon information and belief, disclosed CNP's financial information for purpose of soliciting investment in its proposed venture, Tap Ins Greenhouse.

41. CNP's trade secrets were willfully and maliciously misappropriated by Defendants, entitling CNP to exemplary damages and to reasonable attorneys' fees

pursuant to 18 U.S.C. §1839(b).

WHEREFORE, CNP should be awarded actual damages in an amount to be determined, exemplary damages, and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## JURY DEMAND

CNP demands a trial by jury on all issues so triable.